United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.A. LOCAL NO. 467 PENSION TRUST FUND, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HYDRA VENTURES INCORPORATED, <br><br> Defendant. | No. C-12-3746 EMC <br><br> **ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** <br><br> **(Docket No. 14)** |

## I. INTRODUCTION

Plaintiffs include U.A. Local No. 467 Pension Trust Fund; U.A. Local No. 467 Health and Welfare Trust Fund; Pipe Trades Apprentice and Journeyman Training Trust Fund for San Mateo County, as well as Mike Swanson, a trustee and fiduciary of the aforementioned Trust Funds. Complaint ("Compl.") (Docket No. 1) ¶¶ 3, 4. Plaintiffs have filed an action to collect unpaid contributions owed to certain multi-employer benefit plans from Defendant Hydra Ventures, Inc., *dba* Cal Pacific Plumbing Systems ("Cal Pacific"), under the civil enforcement provisions of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §§ 141, *et. seq.*, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et. seq.* Compl. ¶¶ 1, 6. Having received an entry of default against Cal Pacific for its failure to appear or otherwise respond to the summons and complaint served upon it in this matter, Plaintiffs now move for default judgment pursuant to Fed. R. Civ. P. 55(b)(2). *See* Entry of Default (Docket No. 9); Motion for Default Judgment (Docket No. 14). Having considered the Plaintiffs' briefs and accompanying

submissions, as well as the oral argument of counsel, the Court hereby **GRANTS IN PART** Plaintiffs' motion for the reasons discussed herein.

## II.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs allege the following facts in their complaint and accompanying declarations. The United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("U.A."), through its local unions and affiliated organizations, enters into Collective Bargaining Agreements ("CBAs") with employers engaged in the plumbing, steamfitting, and pipefitting industries. Compl. ¶¶ 3, 6. Defendant Cal Pacific is "a business entity providing plumbing, steamfitting and/or pipefitting contracting services to businesses and residential consumers" in San Mateo County, California. Compl. ¶ 7. Cal Pacific "agreed to be bound to the terms and conditions of the most recent [CBA]" between U.A. Local No. 467 and the Northern California Mechanical Contractors Association, the Plumbing-Heating-Cooling Contractors Association of the Greater Bay Area, and Industrial Contractors, UMIC, Inc. Compl. ¶ 6; Supp. Decl. of Veronica Galvan ("Supp. Galvan Decl.") (Docket No. 17-1) ¶ 2. *See also* Supp. Galvan Decl., Ex. B (CBA Signature Page); Supp. Decl. of Benjamin Lunch ("Supp. Lunch Decl.") (Docket 17-5), Ex. A ("Settlement Agreement") (stating that Cal Pacific is a signatory to the aforementioned CBA).

The CBA includes a provision stating that signatories "are and shall be bound by all of the terms and provisions" of eight Trust Agreements identified by name in Article XVI of the CBA, including the three Plaintiff Trust Funds. Supp. Galvan Decl., Ex. A (Collective Bargaining Agreement) ("CBA") ¶ 118. The CBA requires that signatories make regular contributions to the Plaintiff Trust Funds and the other listed Trust Agreements, which are considered either multi-employer employee benefit plans under ERISA or jointly trusteed employee benefit trusts under the LMRA. Compl. ¶ 3. *See also id.* ¶ 6 ("The applicable Trust fund contribution rates are . . . set forth in the CBA. Any employer who agrees to be bound to the CBA also agrees to be bound to the respective trust agreements."). The three Plaintiff Trust Funds are "multi-employer employee benefit plans pursuant to ERISA." Compl. ¶ 3. The U.A. Local No. 467 Vacation Trust Fund is the fourth and final ERISA-governed Trust Fund listed in Article XVI of the CBA. Third Supp. Decl. of

Veronica Galvan ("Third Galvan Decl.") (Docket No. 23) ¶ 2. The remaining four Trust Funds identified in Article XVI are not employee benefit plans governed by ERISA. *See* Third Supp. Decl. of Benjamin Lunch ("Third Lunch Decl.") (Docket No. 23-1) ¶ 4 (stating that the U.A. International Training Fund, the U.A. Local Union No. 467 Hiring Hall Trust Fund, the Contract Administration Fund, and the U.A. Local Union No. 467 Industry Promotion and Advertising Fund are "not governed by ERISA."); Third Galvan Decl. ¶ 2 (identifying the same four trust funds as "non-ERISA governed funds").

The CBA "specifies the rate of pay, rules and working conditions of employees engaged in plumbing, steamfitting and/or pipefitting industry work," and requires signatory employers "to make timely monthly contributions to the [Trust Funds] for fringe benefits for its covered employees." Compl. ¶ 6. *See also* CBA ¶¶ 57-58 (setting hourly fringe benefit contribution rates). Each signatory employer shall pay to each Trust Fund "the agreed upon sum per hour for each hour of straight time and overtime worked by them upon the work covered by this Agreement" for "each of his employees whether journeyman or apprentices." CBA ¶¶ 142, 146, 150. The amount of contributions due each Trust Fund is calculated using monthly transmittal forms submitted by signatory employers, which record "the number of hours of covered work" performed by "employees represented by U.A. Local Union No. 467." Supp. Galvan Decl. ¶ 8; *see also* CBA ¶ 155.

The CBA also states that contributions to the Trust Funds "shall be due and payable monthly on or before the 15th day, and must be paid not later than the 20th day of each calendar month, for all work performed in the preceding month." CBA ¶ 155. "[C]ontributions must be in the hands of the [Trust Fund] Administrators not later than the 20th day of the month or else the Employer shall be deemed and held to be delinquent" in the remittal of its contributions. *Id*. ¶ 155. "If an Employer is delinquent in the payment of any contributions due . . . interest shall be added to the amount of the contributions due at the rate of twelve percent (12%) per annum from the due date(s) until paid." *Id*. ¶ 156.

The Pension Trust Agreement, Health and Welfare Trust Agreement, and Vacation Trust Fund Agreement separately provide for interest and liquidated damages on delinquent contributions,

with interest calculated at twelve percent (12%) per annum and liquidated damages at ten percent (10%) of the delinquent sum owed. *See* Supp. Galvan Decl., Ex. C ("Pension Trust Agreement") at 5, 6, 39; Ex. D ("Health and Welfare Trust Agreement") at 4, 5, 32; Third Lunch Decl., Ex. A ("Vacation Trust Fund Agreement") at 4, 5, 26. The Pipe Trades Apprentice and Journeyman Training Trust Agreement ("Training Trust Agreement") provides that liquidated damages are owed at a rate of twenty percent (20%) on all delinquent contributions. *See* Second Supp. Decl. of Benjamin Lunch ("Second Lunch Decl.") Docket No. 23-1, Ex. A ("Training Trust Agreement") at 5. However, "for the ease of administration" Plaintiffs have agreed to cap liquidated damages on sums owed to this Trust Fund at ten percent (10%). Second Lunch Decl. ¶ 2. Both the CBA and the four ERISA-governed Trust Agreements allow the Trust Funds to recover expenses incurred in collecting delinquent contributions, including attorney's fees, accountant fees, and court costs. *See* CBA ¶ 158; Pension Trust Agreement at 39; Health and Welfare Trust Agreement at 32; Vacation Trust Fund Agreement at 26; Training Trust Agreement at 6. The Health and Welfare Trust Fund "acts as a collection agent" for all contributions due under the CBA, and any "delinquencies owed to [the Trust Funds] are treated as a debt owed to the Health [and Welfare] Trust." Third Lunch Decl. ¶ 5. Plaintiffs have not identified whether any of the several Trust Funds has priority over the others in receiving contributions from an employer who is a party to the CBA.

      Plaintiffs allege that "Cal Pacific has repeatedly underpaid or not paid the required contributions to the plans . . . pursuant to the appropriate CBA and/or Trust Agreements," and has "failed to timely submit required monthly transmittals pursuant to the appropriate CBA and/or Trust Agreements." Compl. ¶ 9. The parties entered into a settlement agreement "on or about June 10, 2011," following Cal Pacific's admission that it was delinquent in paying fringe benefit contributions." *Id.* ¶ 17. In the settlement agreement, Cal Pacific admitted to owing "$63,328.18 in delinquent contributions and liquidated damages for untimely and/or unpaid contributions for hours incurred between June 2010 and February 2011." Settlement Agreement ¶ 2. Cal Pacific agreed to pay the delinquent contributions and liquidated damages according to an installment plan, and also agreed "to stay current with contributions to the Trust Fund[s] for any amounts owed for the months

of June 2011 to January 2012." *Id*. ¶ 5.  Plaintiffs allege that "Cal Pacific failed to make the payments required by the settlement agreement."  Compl. ¶ 18.

Plaintiffs thereafter filed suit on July 7, 2012, to recover unpaid contributions, liquidated damages, interest on unpaid principal, and reasonable attorney fees and costs, from Cal Pacific. Compl. at 6 (Prayer for Relief).  Their complaint states causes of action under § 1145 of ERISA, § 185 of the LMRA, and for breach of contract.  *See* Compl. ¶¶ 11-20.  Plaintiffs' complaint also seeks an order from this Court "requiring timely production of accurate monthly transmittal forms."  *Id.* ¶ 13.  Robert Lo, an agent authorized to accept service for Cal Pacific, was served with the summons and complaint in this matter by personal delivery on August 3, 2012.  *See* Certificate of Service (Docket No. 4).

After Defendant failed to appear or otherwise respond to the summons and complaint within the time prescribed by the Federal Rules of Civil Procedure, Plaintiffs moved for an entry of default. Request to Enter Default (Docket No. 5).  The Clerk of the Court entered default on October 23, 2012, *see* Docket No. 9, after which Plaintiffs filed their instant Motion for Default Judgment, *see* Docket No. 14.  Plaintiffs' motion asks this court to award damages in the amount of $60,584.51, plus $13.90 per day after January 31, 2013, until judgment is entered in this matter.  Pl.'s Mot. for Default Judgment at 6.  Plaintiffs' motion for default judgment is premised solely on their ERISA claim.  *Se*e Motion for Default Judgment at 2 (Plaintiffs state "[t]his is an ERISA collection case," and cite § 1132(g) of ERISA as their basis for relief).  They do not seek default judgment or damages independently under the LMRA or for breach of the parties' settlement agreement.  Nor do they repeat the request made in their complaint for "an Order requiring timely production of accurate monthly transmittal forms."  Compl. ¶ 13.

### III.   DISCUSSION

A.   Jurisdiction

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to

5

plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

### 1. Subject Matter Jurisdiction

ERISA mandates that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Section 1132(a)(3)(ii) of ERISA permits a "participant, beneficiary, or fiduciary" to bring a civil action to enforce the terms of an ERISA-governed plan. Under this provision, a plan fiduciary is empowered to bring a civil enforcement action, *see Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1265 (9th Cir. 1992) ("No one except plan participants, beneficiaries, fiduciaries, and the Secretary of Labor is expressly authorized by § 1132(a) to bring claims in federal court."), but an ERISA plan itself is not, *see Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 983 (9th Cir. 1999) ("Trust Funds, as ERISA plans, are not fiduciaries entitled to sue under ERISA."). "Accordingly, subject matter [jurisdiction] does not exist under ERISA over [an] action brought by [ERISA] Trust Funds." *Id.*, 185 F.3d at 983-84.

In the instant case, the underlying complaint was brought not only by the Plaintiff Trust Funds (who lack authority to sue under § 1132(a)), but also by Mike Swanson, a trustee and fiduciary of the Plaintiff Trust Funds. When an ERISA fiduciary brings a civil action to enforce the terms of an ERISA-governed plan, § 1132(e)(1) vests "the district courts of the United States" with "exclusive jurisdiction" over the claim. Thus, because Mike Swanson is among the named plaintiffs in this matter, the Court finds that it has subject matter jurisdiction over this ERISA case.

### 2. Personal Jurisdiction

To enter default judgment, a Court must also have a basis for the exercise of personal jurisdiction over the defaulting defendant. *See Tuli*, 172 F.3d at 712 ("A judgment entered without personal jurisdiction over the parties is void."). Under ERISA, fiduciaries may bring an enforcement action in the federal district court of any district "where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in

any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Under this nationwide service of process provision, a court may exercise personal jurisdiction over a defendant anywhere in the United States, regardless of the state in which the court sits. *Vivien v. Worldcom, Inc.*, No. 02-cv-01329 WHA, 2002 WL 31640557, at *2 (N.D. Cal. July 26, 2002); *see also Denny's, Inc. v. Cake*, 364 F.3d 521, 524 (4th Cir. 2004) (holding that a federal district court in South Carolina could exercise personal jurisdiction over the California Labor Commissioner because the subject ERISA plan was administered in South Carolina, the Commissioner had been served in California, and the action was a proper ERISA enforcement action).

In this case, Plaintiffs have alleged sufficient facts to conclude that the Court has personal jurisdiction over all parties. The Plaintiff Trust Funds are administered in Santa Clara County, Cal Pacific allegedly conducts business in San Mateo County, and the alleged breach of the CBA and related Trust Agreements occurred in this judicial district. All parties and events giving rise to this action occurred or are located in the Northern District of California, and as such, this Court is vested with personal jurisdiction over the parties pursuant to § 1132(e)(2).

B.  Adequacy of Service of Process

Before considering the merits of a motion for default judgment, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Fed. R. Civ. P. 4(h)(1) authorizes service upon a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute to receive service and the statute so requires – by also mailing a copy of each to the defendant." Rule 4(h)(1) also states that a corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual," which, in turn, allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *See* Fed. R. Civ. P. 4(e)(1). Under California law, a summons and complaint may be served on a corporation by delivering a copy of the documents (1) to the person designated as agent for service under certain

provisions of the California Corporations Code or (2) to the "president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Code Civ. P. § 416.10(a), (b).

The proof of service for the summons and complaint in this matter indicate that the documents were personally served on Robert Lo, an agent authorized to accept service for Cal Pacific, on August 3, 2012. *See* Docket No. 4. Mr. Lo is the same person who signed the CBA with U.A. Local 467 on behalf of Cal Pacific. *See* Supp. Galvan Decl., Ex. B (CBA Signature Page). The Proof of Service by Mail, attached to Plaintiffs' Motion for Default Judgment, also indicates that a copy of the instant motion was provided to Cal Pacific via mail to its usual mailing address. *See* Docket No. 14. The record in this matter contains sufficient evidence to conclude that the complaint and summons were served on Cal Pacific as required by Fed. R. Civ. P 4 and the California Code of Civil Procedure. Therefore, the Court finds that service of process has been properly effectuated.

C.   <u>Merits of Motion for Default Judgment</u>

After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55(b)(2). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Because default has already been entered in this case, the Court must construe as true all factual allegations in Plaintiffs' complaint except for those related to the amount of damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). *See also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (holding that at the default judgment stage, the factual allegations of the complaint, except those concerning

8

damages, are deemed admitted by the non-responding parties). Facts not contained in the pleadings and claims which are legally insufficient, however, are not established by default. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

The Court finds, on balance, that the seven *Eitel* factors weigh in favor of granting default judgment against Cal Pacific. Considering the first factor, if the motion for default judgment were to be denied, then Plaintiffs would likely be without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claims."); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). This first factor weighs in favor of entering default judgment.

The second and third factors – the merits of the Plaintiffs' substantive claim and the sufficiency of the complaint – also weigh in favor of default judgment. These two factors together require "plaintiffs' allegations [to] state a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund*, No. 94-cv-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996). *See also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) ("The issue here is whether the allegations in the complaint are sufficient to state a claim on which the [moving party] may recover.").

Plaintiffs have provided evidence that Cal Pacific entered into a CBA requiring it to contribute to the Plaintiff Trust Funds. *See* Supp. Galvan Decl., Ex. B (CBA Signature Page); CBA ¶ 118. Recitals in the CBA state that, as a signatory employer, Cal Pacific was obliged to pay to each of the three Plaintiff Trust Funds "the agreed upon sum per hour for each hour of straight time and overtime worked by them upon the work covered by this Agreement" for "each of his employees whether journeyman or apprentices." CBA ¶¶ 142, 146, 150. Any nonpayment of contributions would subject Cal Pacific to an ERISA collection action for unpaid contributions, interest on unpaid contributions, liquidated damages, attorney's fees, accountant's fees, and court costs. *See* CBA ¶¶ 156-158.

1    Plaintiffs allege, and the Court must accept as true, *see Televideo Sys., Inc*., 826 F.2d at 917,
2    that "Cal Pacific has repeatedly underpaid or not paid the required contributions to the plans during
3    the period of the statute of limitations pursuant to the appropriate CBA and/or Trust Agreements."
4    Compl. ¶ 9.  Specifically, Plaintiffs state that Cal Pacific has failed to remit full payment of the
5    contributions owed for the months of December 2010 to March 2011 inclusive.  Supp. Galvan Decl.
6    ¶¶ 11-15.  In support of their claim, the Plaintiffs have submitted copies of Cal Pacific's monthly
7    transmittal reports for these four months showing the number of hours of covered work for which
8    contributions were due, as well as distribution reports from United Administrative Services, a third
9    party administrator for the Trust Funds, showing the payment amount remitted by Cal Pacific for the
10   covered period.  Supp. Galvan Decl. ¶¶ 1, 8, 9.  *See also* Supp. Galvan Decl., Ex. E (Transmittal
11   Reports); Ex. F (Distribution Reports); Settlement Agreement ¶ 2 (admitting that Cal Pacific owes
12   Plaintiff Trust Funds for unpaid contributions and other damages "for hours incurred between June
13   2010 and February 2011.").

14   On the basis of these allegations and the supporting documentation, the Court concludes that
15   Plaintiffs have successfully stated a claim for relief under ERISA.  The documentation submitted by
16   Plaintiffs clearly shows that Cal Pacific failed to submit the full fringe benefit contribution amount
17   required under the CBA between the months of December 2010 and March 2011.  Having failed to
18   do so, Cal Pacific violated the terms of the CBA and related the Trust Agreements, and subjected
19   itself to a civil enforcement suit under ERISA.  *See* 29 U.S.C. § 1145 (requiring "every employer
20   who is obligated to make contributions to a multiemployer plan" to "make such contributions in
21   accordance with the terms and conditions of such plan or such agreement"); *id*. § 1132(g)(2)
22   (authorizing, *inter alia*, a court to award unpaid contributions and other damages to an ERISA-
23   governed plan in connection with a civil enforcement action brought pursuant to § 1145).

24   Examining the fourth *Eitel* factor, the sum of money at stake in the action, the Court finds
25   that the amount of damages at stake here is appropriate, having been tailored to the specific alleged
26   misconduct of Cal Pacific.  *See PepsiCo*, 238 F. Supp. 2d at 1176 (stating that "the court must
27   consider the amount of money at stake in relation to the seriousness of Defendant's conduct").  The
28   total amount of damages sought by Plaintiffs – $60,584.51, plus $13.90 per day after January 31,

2013, until the entry of judgment – does not exceed the "modest" sum of $94,858.81 found suitable for default judgment in *Tragni v. Manzanares*, 2011 U.S. Dist. LEXIS 94281, at *5 (N.D. Cal. Aug. 23, 2011). It is also a far cry from the almost $3 million dollars at stake in *Eitel*. *See Eitel v. McCool*, 782 F.2d at 1472 (the fact that $2,900,000.00 was at issue supported the court's decision not to enter judgment by default). This factor, therefore, weighs in favor of default judgment.

The fifth and sixth *Eitel* factors recommend that a court consider "the possibility of a dispute concerning material facts" and "whether the default was due to excusable neglect" in assessing whether to grant default judgment. *Eitel v. McCool*, 782 F.2d at 1471-72. Because Defendant has not filed an answer to the complaint or any other responsive pleading in this matter, there is nothing on the record before the Court to suggest the possibility of a dispute concerning material facts. *See Transamerica Life Ins. Co. v. Estate of Ward*, CIV S-11-0433 JAM, 2011 WL 5241257 at *4 (E.D. Cal. Oct. 31, 2011) (finding that "there is a very low likelihood that any genuine issue of material fact exists" because "the court [assumes] the truth of well-pleaded facts in the complaint following the clerk's entry of default"); *see also W. Reserve Life Assur. Co. of Ohio v. Canul*, 1:11-CV-01751 AWI, 2012 WL 844589 at *3 (E.D. Cal. Mar. 12, 2012) *report and recommendation adopted,* 1:11-CV-01751 AWI, 2012 WL 1074952 (E.D. Cal. Mar. 29, 2012) ("[T]here is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts all allegations in Plaintiff's Complaint as true and (2) Defendant has not made any effort to challenge the Complaint or otherwise appear in this case.").

Further, there is no indication on the record that Cal Pacific's default was due to excusable neglect. Mr. Lo, Cal Pacific's agent for service of process, was personally served with a copy of the summons and complaint in this case. Cal Pacific was also served by mail with the motion for default judgment but did not respond thereto. Cal Pacific's failure to respond to the complaint or otherwise appear cannot, therefore, be deemed "excusable neglect." *See Shanghai Automation Instrument Co. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants were properly served with the complaint, the notice of entry of default, and the papers in support of the motion for default judgment). These fifth and sixth *Eitel* factors weigh in favor of default judgment.

11

Finally, while public policy favors decisions on the merits, *Eitel*, 782 F.2d at 1472, Cal Pacific's refusal to defend this action renders a decision on the merits "impractical, if not impossible," *PepsiCo*, 238 F. Supp. 2d at 11. "Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *Id.* At any rate, in light of the weight of the above factors in favor of entering default judgment, this last *Eitel* factor is not dispositive. *See Transamerica Life Ins. Co.*, 2011 WL 5241257 at *4 (finding that the policy favoring decisions on the merits does not by itself preclude entry of default judgment).

In sum, the Court finds that the *Eitel* factors weigh in favor of entering default judgment against Defendant Cal Pacific.

D.  Damages

Once a Court concludes that default judgment is warranted, it must determine what damages or other relief is appropriate. Plaintiffs have the burden of "proving up" their damages or the need for other requested relief. *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, No. 04-02841 CW, 2005 WL 433462, at *2 (N.D. Cal. Feb. 24, 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit.").

1.  Scope of ERISA Collection Action

ERISA empowers a participant, beneficiary, or fiduciary to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). An act or practice violates this subchapter when, among other things, an "employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement" fails to "make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.[1] "In any action under this subchapter by a

---

[1] "Congress's purpose in enacting section [1145] was to allow multiemployer welfare funds to rely upon the terms of collective bargaining agreements and plans as written, thus 'permit[ting] trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law....'" *Cent. Pennsylvania Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1103 (3d Cir. 1996) (quoting 126 Cong. Rec. 23,039 (1980) (remarks by Rep. Thompson)). Some courts have interpreted this section as

fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded," a court is authorized to award the following remedies:

>     (A) the unpaid contributions,
>
>     (B) interest on the unpaid contributions,
>
>     (C) an amount equal to the greater of--
>
>         (i) interest on the unpaid contributions, or
>
>         (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
>     (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
>     (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Sections 1132(a)(3), 1132(g)(2), and 1145, by their terms, are limited to civil actions involving "plans." ERISA defines "[t]he term 'employee benefit plan' or 'plan' [to mean] an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). ERISA's coverage provision, codified at 29 U.S.C. § 1003, specifies that the statute and its remedial provisions only apply to "employee benefit plan[s]." *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010) ("ERISA applies to 'any employee benefit plan if it is established or maintained ... by any employer ... or ... by any employee organization ... or by both.'") (quoting 29 U.S.C. § 1003(a)(1)-(3)); *Mandala v. California Law Enforcement Ass'n*, 561 F. Supp. 2d 1130, 1133 (C.D. Cal. 2008) ("ERISA applies to employee benefit plans, which come in two varieties- employee welfare benefit plans and employee pension plans.") (internal citations and quotation

---

creating an independent federal right of action under ERISA. *See Bituminous Coal Operators' Ass'n v. Connors*, 867 F.2d 625, 633 (D.C. Cir. 1989) (Section 1145 "creates a federal right of action independent of the contract on which the duty to contribute is based and may be enforced by an action brought in the district court."); *In re Luna*, 406 F.3d 1192, 1203 (10th Cir. 2005) ("[T]he fact that Congress so explicitly addressed the issue in § [1145] suggests that reliance on ERISA's fiduciary obligation sections was not intended in delinquent contribution cases."). The Ninth Circuit has not yet opined on this question.

marks omitted). While ERISA covers many types of employee benefit plans, "there are several important exceptions" which exempt certain plans "from ERISA's regulatory sphere." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d at 999. Consequently, not all plans pertaining to employment benefits fall within the scope of the statute. *See id.*, 629 F.3d at 999 ("Although ERISA's definition of 'employee pension benefit plan' is quite broad, there are several important exceptions. Section 1003(b), for example, exempts 'governmental plans' from ERISA's regulatory sphere.").

In this case, the Plaintiffs concede that four of the Trust Funds identified in Article XVI of the CBA are not "plans" governed by ERISA. *See* Third Lunch Decl. ¶ 4 (stating that the U.A. International Training Fund, the U.A. Local Union No. 467 Hiring Hall Trust Fund, the Contract Administration Fund, and the U.A. Local Union No. 467 Industry Promotion and Advertising Fund are "not governed by ERISA."); Third Galvan Decl. ¶ 2 (identifying the same four trust funds as "non-ERISA governed funds"). Consequently, Plaintiffs may not recover damages under this ERISA action for unpaid contributions to these four funds.[2] The Court finds that Plaintiffs may only receive damages pertaining to the Pension Trust Agreement, the Health and Welfare Trust Agreement, the Vacation Trust Fund Agreement, and the Training Trust Agreement in this ERISA action.

2. Unpaid Contributions

Plaintiffs allege that Cal Pacific failed to remit full payment of the Trust Fund contributions owed under the CBA for the months of December 2010 to March 2011 inclusive. Supp. Galvan Decl. ¶¶ 11-15. In support of their calculation of damages, Plaintiffs have submitted copies of Cal Pacific's monthly transmittal reports for these four months showing the number of hours of covered work for which contributions were due, as well as distribution reports showing the payment amounts remitted by Cal Pacific for the covered period, including remittances received after a particular month's contributions became delinquent under the CBA. *See* Supp. Galvan Decl., Ex. E (Transmittal Reports); Ex. F (Distribution Reports). Plaintiffs have also provided "Employer

---

[2] Plaintiffs have waived their claims to recover damages related to non-ERISA funds in this action. *See* Third Lunch Decl. ¶ 8 (stating "[i]f the Court has any further concerns with the precise amount of damages to be included in the judgment, in the interest of obtaining a judgment as expeditiously as possible, plaintiffs will waive recovery for the amounts questioned by the Court.").

Payment Summary Records" and invoices from their accounting records which Plaintiffs use to "track[] payments of fringe benefit contributions owed by Cal Pacific." Second Supp. Decl. of Veronica Galvan ("Second Galvan Decl.") (Docket No. 21) ¶ 5. *See* Second Galvan Decl., Ex A (Employer Payment Summary Records); Ex. B-D (Invoices). Taken together, these records indicate that Cal Pacific owed a total of $69,039.38 in fringe benefit contributions pursuant to the CBA and related Trust Agreements for these four months. *See* Supp. Galvan Decl. ¶¶ 10-14. Plaintiffs state that no contributions were timely received during the months of December 2010 to March 2011. Thus, the full amount of contributions owed became delinquent under the terms of the CBA, subjecting Defendant to liability for interest and liquidated damages.[3] At points after the contributions became delinquent, Cal Pacific remitted $33,636.23 as payment toward the unpaid amount. *See* Supp. Galvan Decl. ¶¶ 11-14. Defendant, therefore, owes a total of $35,403.15 in remaining unpaid contributions.

Plaintiffs' declarations confirm that a portion of the amount due under the CBA and related Trust Agreements is payable to non-ERISA governed trust funds. *See* Third Galvan Decl. ¶ 2-6. The following chart summarizes the amounts due to ERISA and non-ERISA governed funds, as well as Cal Pacific's remittances for fringe benefit obligations accrued between December 2010 and March 2011.

///
///
///
///
///
///
///

---

[3] Contributions to the Trust Funds "shall be due and payable monthly on or before the 15th day, and must be paid not later than the 20th day of each calendar month, for all work performed in the preceding month." CBA ¶ 155. "[C]ontributions must be in the hands of the [Trust Fund] Administrators not later than the 20th day of the month or else the Employer shall be deemed and held to be delinquent" in the remittal of its contributions. *Id*. ¶ 155.

15

| Cal Pacific's Fringe Benefit Payment History | | | | | |
|---|---|---|---|---|---|
| | December 2010 | January 2011 | February 2011 | March 2011 | All Periods |
| Contributions owed to Non-ERISA Funds | $1,286.25 | $1,397.76 | $1,205.73 | $633.45 | $4,523.19 |
| Contributions Owed to ERISA Funds | $18,117.96 | $20,026.72 | $17,272.16 | $9,099.35 | $64,516.19 |
| Total Contributions Owed to All Funds | $19,404.21 | $21,424.48 | $18,477.89 | $9,732.80 | $69,039.38 |
| Total Contributions Paid | $19,404.21 | $6,574.19 | --None-- | $7,657.83 | $33,636.23 |

In this ERISA action, Plaintiffs may not recover for non-payment of contributions owed to plans and trust funds not governed by the statute. Plaintiffs' declarations indicate the total amount of money each ERISA and non-ERISA fund is owed based on Defendant's Transmittal Reports. However, they have not provided the Court with any records indicating how Defendant's remittances were allocated among the various funds, or any documentation showing whether certain funds have priority over others in the allocation of remittances from employers. Absent evidence to the contrary, the Court will assume that (1) all subject ERISA and non-ERISA funds have equal priority to the allocation of remittances, and (2) remittances are allocated among the funds in proportion to each fund's percentage of the total amount due. Using these guidelines, the Court calculates that, over the four month period at issue, six and fifty-five one hundredths percent (6.55%) of the total amount Cal Pacific owed for fringe benefits was payable to non-ERISA funds. Consequently, 6.55% or $2,203.17 of the $33,636.23 Defendant actually paid on its fringe benefits contributions ought to be attributed as having been paid to these non-ERISA funds. The records submitted by Plaintiffs indicate that Defendant owed in total $64,516.19 to ERISA-governed funds. Applying the above calculations, the Court concludes that Defendant has paid $31,433.06 toward this obligation ($33,636.23 net of $2,203.17 discussed above), which leaves a remainder of $33,083.13 still due and owing. Therefore, the Court concludes that Plaintiffs are entitled to collect $33,083.13 for unpaid contributions in this action.

### 3. Liquidated Damages

By failing to remit timely payments, Cal Pacific's fringe benefit contributions for the months of December 2010 to March 2011 became delinquent under the terms of the CBA and the individual Trust Agreements. All four ERISA-governed Trust Agreements at issue contain provisions allowing for liquidated damages on delinquent contributions, setting liquidated damages at 10% of the amount not timely paid. *See* Supp. Galvan Decl., Ex. C (Pension Trust Agreement) at 39; Ex. D (Health and Welfare Trust Agreement) at 32; Third Lunch Decl., Ex. A (Vacation Trust Fund Agreement) at 26; Second Lunch Decl., Ex. A (Training Trust Agreement) at 5.[4] Liquidated damages attach if contributions remain unpaid 30 days after the deadline for payment set by the CBA. *See id.* Plaintiffs' declaration accompanying the transmittal reports indicates that Cal Pacific was delinquent in paying all $64,516.19 in contributions owed to the ERISA-governed funds. *See* Supp. Galvan Decl. ¶¶ 10-14. Therefore, at 10%, the total amount of liquidated damages due Plaintiffs is $6,451.62.

### 4. Interest

Both the CBA and three of the four ERISA-governed Trust Agreements appertaining to it include a provision stating that, once delinquent, "interest shall be added to the amount of the contributions due at the rate of twelve percent (12%) per annum from the due date(s) until paid." CBA. ¶ 156; Supp. Galvan Decl., Ex. C (Pension Trust Agreement) at 39; Ex. D (Health and Welfare Trust Agreement) at 32; Third Lunch Decl., Ex. A (Vacation Trust Fund Agreement) at 26. The Pension Trust Agreement, Health and Welfare Trust Agreement, and Vacation Trust Fund Agreement contain a further provision stating that an "[e]mployer shall also be liable for the same interest on . . . liquidated damages as applies to unpaid contributions." *Id*. The CBA permits interest at the rate of twelve percent to be recovered on past-due contributions owed to the Training Trust Agreement, *see* CBA ¶ 156, but neither the CBA nor the Training Trust Agreement contain a parallel provision allowing for the accrual of interest on unpaid liquidated damages.

---

[4] As noted *supra*, "for the ease of administration," Plaintiffs have agreed to cap liquidated damages on sums owed to the Training Trust Fund at ten percent (10%), even though the agreement allows for liquidated damages up to twenty percent (20%). Second Lunch Decl. ¶ 2.

17

Applying these rates, and taking into account the timing of when Cal Pacific's obligations came due, as well as when late payments posted, Plaintiffs calculate interest on liquidated damages to be $1,510.05, and interest on unpaid principal to be $12,649.89. Supp. Galvan Decl. ¶¶ 10-14. This results in a total of $14,159.94 in interest owed by Cal Pacific through January 31, 2013, with an additional $13.90 of interest due per day until the entry of judgment. *Id*. ¶¶ 10, 15. Since a portion of Plaintiffs' interest calculations are attributable to contributions due to non-ERISA funds, a number of reductions must be taken from these figures. First, as to interest due on unpaid contributions, the Court finds that only $11,821.32 may be recovered in this action. The CBA and Trust Agreements calculate interest rates using simple interest, thus to calculate the rate of interest due on contributions owed to the ERISA funds, the Court need only reduce Plaintiffs' calculations by 6.55 % to arrive at the correct result. Second, Plaintiffs' calculation of $1,510.05 in interest accrued through January 31, 2013, on unpaid liquidated damages includes interest attributable to liquidated damages due under the Training Trust Agreement (the one agreement without an interest on liquidated damages provision). Plaintiffs may not recover interest on unpaid liquidated damages attributable to this trust fund. On average over the applicable four month period, Plaintiffs' supporting documentation reveals that liquidated damages attributable to this fund comprises approximately three percent (3 %) of the total liquidated damages figure calculated by Plaintiffs. Therefore, to calculate the appropriate amount of interest accumulated on liquidated damages recoverable in this action, a three percent reduction must be taken. Again, since simple interest is applied to unpaid liquidated damages, the Court need only reduce Plaintiffs' calculations by 3 % to arrive at the correct result. The Court calculates that Plaintiffs may only recover $1,464.75 in accrued interest through January 31st on liquidated damages. Finally, at 12 % simple interest per annum, Plaintiffs may also recover $10.88 per day for interest accruing on the $33,083.13 of remaining unpaid contributions due and owing to the ERISA governed trust funds, and a further $2.06 per day for interest accruing on that portion of liquidated damages subject to interest (which is $6,451.62 less three percent), each day after January 31, 2013 until the entry of judgment.

///

///

18

### 5. Attorney's Fees

Finally, the Plaintiff Trust Funds ask to be awarded their attorney's fees incurred in bringing this action. Plaintiffs have submitted a declaration from Lois H Chang in support of their request, and have provided detailed time records documenting the 18.3 hours that two attorneys spent working on this case. Declaration of Lois H. Chang ("Chang Decl.") (Docket No. 14-1) ¶ 6.

It is clear that costs and fees incurred by the ERISA Trust Fund Plaintiffs are recoverable under the statute. Section 502(g)(2) of ERISA, codified at 29 U.S.C. § 1132(g)(2), "now makes the award of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions." *Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983). It is also "well-settled that the award of attorneys' fees is a matter within the discretion of the trial court, and that an award of attorneys' fees cannot be disturbed on appeal, absent a showing of abuse of discretion." *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1116 (9th Cir. 1979) (cited with approval in *Kemmis v. McGoldrick*, 706 F.2d 993).

Having reviewed Plaintiffs' attorneys' billing records in detail, the Court finds that spending 18.3 hours on this case was both reasonable in light of the relative simplicity of this matter, as well as necessary to its effective prosecution. *See* Docket 14-1, Ex. A (Billing Records). Further, the Court finds that the rate of $225 per hour charged by Plaintiffs' two attorneys is reasonable in this legal market for attorneys of similar skill and experience. Therefore, the Court awards the requested amount of $4,117.50 in attorney's fees in full. Plaintiffs do not seek an award of costs. *See* Chang Decl. ¶ 6.

## IV.  CONCLUSION

For the reasons stated above, the Court hereby **GRANTS IN PART** Plaintiffs' Motion for Default Judgment. Plaintiffs are awarded the following damages against Defendant Cal Pacific:

- A. $33,083.13 for unpaid contributions
- B. $11,821.32 for interest on unpaid contributions
- C. $6,451.62 for liquidated damages
- D. $1,461.75 for interest on liquidated damages

      E.      $465.84 for pre-judgment interest to March 8, 2013 ($12.94 per day for the 36 days between February 1, 2013 and March 8, 2013), plus $12.94 per day thereafter

      F.      $4,117.50 for attorney fees

The total amount of damages thus awarded is **$57,401.16.**

This order disposes of Docket No. 14.

IT IS SO ORDERED.

Dated: March 13, 2013

_____
EDWARD M. CHEN
United States District Judge